## WEATHERFORD MILLING CO. v. DUNCAN, County Treasurer.

No. 3645. Opinion Filed May 12, 1914.

(140 Pac. 1184.)

1. TAXATION—Back Tax Proceedings—Appeal to County Court—Statutes—Other Remedy—Injunction. Section 1, of chapter 81, art. 9, Sess. Laws 1908, allowing an appeal to the county court from the action of the county treasurer in assessing property thereunder, did not, by implication, repeal section 4440, Wilson's Rev. & Ann. St. 1903 (section 4881, Rev. Laws 1910), of the Code of Civil Procedure, permitting an injunction to restrain the levy and collection of an illegal tax.

2. SAME—Illegal Assessment—Remedies of Taxpayer. Where the taxes sought to be assessed or collected under the above chapter are illegal, the aggrieved party had two concurrent remedies; one by appeal from the action of the treasurer to the county court, the other by an injunction as prescribed in section 4881, Rev. Laws 1910.

3.  **SAME—Back Assessment—Corporation—Capital Stock.** Where a milling corporation has disposed of all of its capital stock and invested the proceeds in tangible property, real and personal, and an attempt is made to assess its capital stock to the corporation, *as omitted property,* under the provisions of the Tax Ferret Statute, such attempt is illegal, and not warranted by the statutes, and the action of the treasurer making such assessment or attempt to collect the taxes thereon may be restrained by injunction.

(Syllabus by Galbraith, C.)

*Error from District Court, Custer County;*
*Jas. R. Tolbert, Judge.*

Action by the Weatherford Milling Company against James T. Duncan, Treasurer of Custer County. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*T. W. Jones* and *Keaton, Wells & Johnston,* for plaintiff in error.

*Thomas & Thomas,* for defendant in error.

Opinion by GALBRAITH, C. On the 23d day of April, 1909, the Weatherford Milling Company filed its petition in the district court of Custer county seeking an injunction against Jas. T. Duncan, treasurer of Custer county, to prevent him from levying and collecting certain taxes, which it was charged he was attempting to levy and collect against the property of the plaintiff. It was charged in the petition that the defendant had served notice on it that certain property, to wit, its capital stock, had been omitted from the assessment and tax rolls for the years 1903-1908, and that, at the time therein specified, unless sufficient cause was shown for not doing so, he would proceed to assess such property for taxes for said years; that the plaintiff appeared at the time and place mentioned in the notice and filed a protest against the assessment being made on the grounds that it did not own its capital stock, and that the same had been sold to various and sundry parties, and the proceeds thereof had been invested in real and personal property, all of which had been assessed for said years, and the taxes paid thereon; that this protest was overruled by the county treasurer, and the full amount

of the plaintiff's capital stock, $25,000, was assessed by said treasurer for each of said years, and that said taxes amounted in the aggregate to the sum of $8,517.50; that the treasurer intended to and would, unless restrained by order of court, extend said taxes on the tax rolls of said county, and the same would become a lien on the plaintiff's property; and that said taxes were void, and asked for an injunction against the treasurer preventing him from extending said taxes on the tax rolls, and from taking any further steps to collect the same. On April 23, 1909, a temporary injunction was granted. On the 21st of June thereafter a motion to dissolve the injunction order was filed and argued and thereafter overruled by the district judge, and the defendant given time to answer. On May 25, 1911, the defendant answered. On August 7, 1911, the defendant was permitted by the court to withdraw his answer and file a motion to dismiss. The ground of this motion was that the plaintiff had a plain, adequate, and complete remedy at law, inasmuch as the statute provided that it might appeal to the county court from the action of the treasurer in assessing said property. This motion was sustained, and the action dismissed. To review this order of the district court, the plaintiff has perfected an appeal to this court.

It is argued by the plaintiff in error that the taxes sought to be levied and assessed against its capital stock were illegal and void; and, second, that, being illegal and void, it had a right to proceed by injunction to restrain the action of the treasurer.

The county treasurer was proceeding under what is known as the "Tax Ferret Law," being chapter 81, art. 9, of the Session Laws of 1908, section 2 of which reads:

"Property that has been omitted from assessment through a series of years, shall be listed and assessed for each year that it has been omitted and charged with the levy for that year."

Section 1 of this act, being brought forward as section 7449, Rev. Laws 1910, reads as follows:

"The board of county commissioners of any county in this state may contract with any person or persons to assist the proper officers of the county in the discovery of property not listed and assessed, as required by existing laws, and fix the com-

pensation at not to exceed fifteen per cent. of the taxes recovered under this article. Before listing and assessing the property discovered, the county treasurer shall give the person in whose name it is proposed to assess the same, ten days' notice thereof by registered letter, addressed to him at his last known place of residence, fixing the time and place when objections in writing to such proposed listing and assessment may be made. An appeal may be taken to the county court from the final action of the treasurer within ten days, by giving notice thereof in writing and filing an appeal bond, as in cases appealed from the board of county commissioners to the district court."

It will be observed that the last section above quoted provides that an appeal may be taken to the county court from the action of the treasurer within ten days in the same manner as appeals are taken from the board of county commissioners to the district court. Section 4440, St. Okla. 1903, as brought forward in section 4881, Rev. Laws 1910, reads in part:

"An injunction may be granted to enjoin the enforcement of a void judgment, the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment or any proceeding to enforce the same. * * *"

It is contended on behalf of the defendant in error that the Tax Ferret Statute, above quoted, by providing an appeal to the county court from the action of the treasurer in making an assessment, provided a plain, adequate, and complete remedy for any person aggrieved by such assessment, and that such remedy is exclusive and repealed by implication section 4881, and therefore denies to the aggrieved person the right to pursue the equitable remedy by injunction against the treasurer in such cases. The first question, therefore, presented is whether or not the person aggrieved by the act of the treasurer proceeding under this Tax Ferret Statute has the concurrent remedies of an appeal as provided in that statute, and the right to an injunction as provided in the Code of Civil Procedure.

It is clear that there is nothing in the Tax Ferret Statute that in any way conflicts with the statute giving the right to an injunction, and also that the later statute does not by any direct reference repeal the former, and that, if the adoption of the Tax Ferret Statute effectuates a repeal of the former statute allowing

a remedy by injunction, the same was by implication.  The repealing clause in the Tax Ferret Statute reading, "repealing all laws and parts of laws in conflict therewith," adds nothing to the repealing force of such statute.  As was said by the Circuit Court of Appeals for the Eighth Circuit, in *Great Northern Ry. Co. v. U. S.*, 155 Fed. 945, 84 C. C. A. 93:

"A clause generally repealing 'all laws and parts of laws in conflict with' the act of which it is a part repeals nothing that would not be equally repealed without it."

Repeals by implication are not favored in law.  *In re Application of State to Issue Bonds, etc.*, 33 Okla. 797, 127 Pac. 1065.  For a full and exhaustive discussion of this question, and the effect of a later statute on the earlier one, covering the same subject, where there is not a clear and express provision in the later repealing the former, see the opinion of the court in *Huston v. Scott,* 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N. S.) 721.

The court below, in dismissing the cause, held that the provision of section 1 of this Tax Ferret Statute, allowing an appeal by the party aggrieved from the county treasurer to the county court, was a plain, adequate, and complete remedy, and was the only remedy allowed the aggrieved party.  In this the court was clearly in error, since it has been held that no appeal lies from the action of the county court in such cases to the Supreme Court.  *State v. Cawthorn's Estate,* 31 Okla. 561, 122 Pac. 522.  It follows that the judgment of the county court in such cases is final.

We cannot hold that the proceedings for review as provided in this Tax Ferret Statute by appeal from the action of the county treasurer to the county court, in cases of such great importance, is in law language in any sense a plain, adequate, and complete remedy.  It seems to be more in keeping with reason and justice and the authorities to hold that the party aggrieved at the action of the county treasurer had two concurrent remedies to select from:  (1) If he is willing to accept the judgment of the county court in the matter as final, he may appeal from the order of the county treasurer to that court; but (2) if he wishes to have the district court pass upon the question involved, with

the privilege of having its judgment reviewed by the Supreme Court, he has the right to proceed by injunction. At any rate the statutes of Oklahoma provide these two remedies, and they are concurrent and availing to the aggrieved party in all cases where the taxes sought to be assessed and levied are illegal and void. It was alleged in the petition in the instant case that the taxes sought to be levied and assessed were illegal and void, and this fact, we assume, was admitted by the defendant and taken as true by the trial court in making the order complained of.

Attention has been called to the case of *Williams, County Clerk, v. Garfield Exchange Bank,* 38 Okla. 539, 134 Pac. 863, and a line of cases to the same effect, which hold that, where the statute provides a mode of review by an appeal from an order making "an assessment or equalization" of property for taxation, that remedy is exclusive, and equitable remedies cannot be resorted to. Those cases arose under a later statute, and were all cases growing out of the action of the board of equalization in raising the aggregate valuation of the property in a taxing district, and the statute under which these cases arose also provided that appeals from the action of the board of equalization shall be the sole method by which assessments shall be corrected or taxes abated, and prohibited resort to equitable remedies except in one instance. This statute, which became effective June 17, 1910, after the cause of action in the instant case arose, reads:

Section 7370, Rev. Laws 1910:

"The proceedings before the board of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made."

It will thus be seen that the statute under which the question in those cases arose provided specifically that the method for review by appeal should be exclusive with only one exception, and specifically forbade the resort to equitable remedies. It will be observed that no such provision as that last above quoted is

found in the Tax Ferret Statute, and there is no expressed prohibition in it that would deny the aggrieved party the right to resort to equitable relief if he wishes to do so.

The second question argued in this appeal is that the taxes attempted to be assessed and levied in the instant case were void. It was charged in the petition, and admitted by the defendant for the purposes of the motion, that the plaintiff did not own any of its capital stock, and that it had all been sold, and the proceeds invested in tangible property, real and personal, which had been duly assessed, and the taxes paid thereon for the several years for which it was attempted to assess its capital stock in this proceeding.

Article 2 of chapter 75 of St. Okla. 1903, sec. 5929, provides for listing as taxable property "to each person" the amount of stock or shares in any incorporated company or company not incorporated. This section seems to provide for the assessing of capital stock of all incorporated or unincorporated companies to the individual owners of the stock, except the stock in banking corporations, and, since the subsequent provision of that chapter provides a special method for assessing the stock of banking corporations in a different manner from the stock in other incorporated and unincorporated companies, the inference is justifiable that the latter sections of the statute refer to the method of assessing the stock in banking corporations only. So, if it is true, as alleged in the petition, that the plaintiff did not own any of its capital stock it could not be rightfully assessed with the value of such stock. It is alleged in the bill and admitted by the motion that all of its capital stock was invested in tangible real and personal property, and had been listed for taxes, and the taxes paid thereon, and under such allegations it appears that the plaintiff had borne its full share of the burdens of government, and the provision that "taxes shall be uniform upon the same class of subjects" (Williams' Ann. Const. Okla., sec. 270) would protect it from the action attempted by the treasurer, since such taxation would be unequal with other property in the taxing district, and, in effect, would amount to

double taxation. Mr. Cooley, in his work on Taxation (3d Ed.) vol. 1, pp. 394-397, in discussing this question, said:

"There is a sense, however, in which duplicate taxes may be understood—and which we think is a proper sense—which would render it wholly inadmissible under any Constitution requiring equality and uniformity in taxation. By duplicate taxation in this sense is understood the requirement that one person or any one subject of taxation shall directly contribute twice to the same burden, while the other subjects of taxation belonging to the same class are required to contribute but once.

"We do not see, for instance, how a tax on a merchant's stock distinctively by value could be supported, when, by the same authority, and for the same purpose, the same stock was taxed by value as a part of his whole property. This is a very different thing from one tax upon the property and another upon the business, though the latter may indirectly reach the property; here is no circumlocution, no question of ultimate effects, but a tax levied twice on the same subject, only under different names. The same may be said of a tax on the property of a corporation, and also on the capital stock which is invested in the property; if the latter is taxed as property, this also is duplicate taxation, and as much unequal as would be the taxation of a farmer's stock by value when on the same basis it is taxed as a part of his general property. When, for instance, the money paid in as capital of a manufacturing corporation has been invested in buildings and machinery, these are what then represent the capital, and to tax the capital as valuable property distinct from that which then represents it would be to tax a mere shadow; it would be to make the shadow stand for the substance in order that it might be taxed, when the substance itself is taxed directly under its own proper designation. We do not speak here of a taxation of the property, and also of the franchise, those being two things, as will be seen further on."

For cases illustrating the application of these principles, see *Wheeler v. Board of Commissioners*, 88 Me. 174, 33 Atl. 983; *Hyland v. Brazil Block Coal Co.*, 128 Ind. 335, 26 N. E. 672; *Lewiston Water & Power Co. v. Asotin Co.*, 24 Wash. 371, 64 Pac. 544.

We conclude that, if the facts alleged in the petition are true, the plaintiff was not liable to be assessed on its capital stock, as attempted to be done by the county treasurer, and that therefore the taxes were illegal and void, and that the action of the treas-

urer in assessing and attempting to collect the tax should have been restrained. There is a question of fact in the case which must be determined in the trial court, and the case should be reversed and remanded to the district court of Custer county, with directions to set aside the judgment dismissing the case, and to reinstate the cause, and the defendant should be allowed to answer, and the court should proceed to determine the facts and apply the law as herein declared.

By the Court: It is so ordered.